# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA<br><br>                 Plaintiff,<br>     v.<br><br>SALLY JEWELL, in her official capacity as the United States Secretary of the Interior; *et al.*,<br><br>                 Defendants,<br><br>                 and<br><br>GWICH'IN STEERING COMMITTEE, *et al.*,<br><br>                 Intervenor-Defendants. | Case No. 3:14-cv-00048-SLG<br><br><br><br><br><br><br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

*Introduction and Background*

This is an action brought by the State of Alaska that seeks an order directing the Secretary of the Interior to review the State's submitted plan for the exploration of oil and gas resources within the coastal plain of the Arctic National Wildlife Refuge ("ANWR"). At issue is whether, pursuant to the Alaska National Interest Lands Conservation Act ("ANILCA"),[1] the Secretary has an ongoing obligation to evaluate and approve exploration plans submitted to her for approval as Plaintiff contends, or whether, as Defendants contend, that obligation expired in 1987.

ANWR is located in the northeast corner of Alaska. It was originally designated as a protected wildlife area in 1960.[2] In 1980, the passage of ANILCA established the

---

[1] Pub. L. No. 96-487, 94 Stat. 2371 (1980) *codified in relevant part at* 16 U.S.C. § 3101 et seq.

[2] Public Land Order 2214 (1960) (attached to Intervenor' Opp. at Docket 59-1 (Ex. A)).

present-day ANWR, which combines the original 8.9 million acre protected wildlife area with an additional 10 million acres of adjoining land. An approximately 1.5 million acre area within ANWR was designated as the "coastal plain," an area sometimes referred to as the "Section 1002 Area" because of its designation in § 1002 of ANILCA.[3]

In the debates leading up to the passage of ANILCA, Congress was divided on whether the coastal plain should be opened to oil and gas exploration. As recounted in the Senate Committee report on the bill:

> The Committee was particularly concerned with the ANWR. In hearings and in markup, conflicting and uncertain information was presented to the committee about the extent of oil and gas resources on the Range and the effect development and production of those resources would have on the wildlife inhabiting the Range and the Range itself. . . . The Committee was determined that a decision as to the development of the Range be made only with adequate information and the full participation of the Congress.[4]

Reflecting these concerns, ANILCA included provisions for a report to Congress that would provide "an analysis of the impacts of oil and gas exploration" on the coastal plain.[5]

In order to properly advise Congress, ANILCA set out a multi-step process to precede the report's submission to Congress. First, within eighteen months of December 2, 1980, the "Secretary, in consultation with the Governor of the State, Native Village and Regional Corporations, and the North Slope Borough within the study area and interested persons" was directed to "conduct a continuing study of the fish and wildlife (with special

---

[3] 16 U.S.C. § 3142(b)(1).

[4] S. Rep. 96-413 at 241 (1979) (published at 1980 U.S.C.C.A.N. 5070, 1979 WL 10337).

[5] ANILCA § 1002(a); 16 U.S.C. § 3142(a).

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 2 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 2 of 17

emphasis on caribou, wolves, wolverines, grizzly bears, migratory waterfowl, musk oxen, and polar bears) of the coastal plain and their habitat."[6] Second, within two years of December 2, 1980, the Secretary was directed to establish initial guidelines governing oil and gas exploratory activities that included "such prohibitions, restrictions, and conditions on the carrying out of exploratory activities as the Secretary deems necessary or appropriate to ensure that exploratory activities do not significantly adversely affect the fish and wildlife, their habitats, or the environment."[7] ANILCA limited these exploratory activities to "surface geological exploration or seismic exploration, or both, for oil and gas within the coastal plain;" exploratory activities as defined in § 1002 did not include exploratory drilling.[8] The third step of the process, after the initial guidelines were completed, provided that

> any person including the United States Geological Survey may submit one or more plans for exploratory activity (hereinafter in this section referred to as "exploration plans") to the Secretary for approval. An exploration plan must set forth such information as the Secretary may require in order to determine whether the plan is consistent with the guidelines . . . .
>
> The Secretary shall determine, within one hundred and twenty days after any plan is submitted for approval, if the plan is consistent with the guidelines established under subsection (d) of this section. If the Secretary determines that the plan is so consistent, he shall approve the plan: except that no plan shall be approved during the two-year period following December 2, 1980. . . . The Secretary shall not approve of any plan submitted by the United States Geological Survey unless he determines that (1) no other person has submitted a plan

---

[6] ANILCA § 1002(c).

[7] ANILCA § 1002(d).

[8] *Id.*

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 3 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 3 of 17

> for the area involved which meets established guidelines and
> (2) the information which would be obtained is needed to make an adequate report under subsection (h).[9]

In short, the Secretary was required to review any exploratory plan submitted within 120 days and approve the plan if it met the guidelines the Secretary had established. Pursuant to this statutory plan, exploratory activities occurred within the coastal plain from 1983 through 1985.[10]

ANILCA required the Secretary to submit a report to Congress "[n]ot earlier than five years after December 2, 1980, and not later than five years and nine months after such date." The report was to contain all of the following information:

> (1) the identification by means other than drilling of exploratory wells of those areas within the coastal plain that have oil and gas production potential and estimate of the volume of the oil and gas concerned;
>
> (2) the description of the fish and wildlife, their habitats, and other resources that are within the areas identified under paragraph (1);
>
> (3) an evaluation of the adverse effects that the carrying out of further exploration for, and the development and production of, oil and gas within such areas will have on the resources referred to in paragraph (2);
>
> (4) a description of how such oil and gas, if produced within such area, may be transported to processing facilities;
>
> (5) an evaluation of how such oil and gas relates to the national need for additional domestic sources of oil and gas; and

---

[9] ANILCA § 1002(e)(1–2); 16 U.S.C. § 3142(e)(1–2);

[10] Docket 59 (Intervenors' Opp.) at 14 and accompanying citations.

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 4 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 4 of 17

> (6) the recommendations of the Secretary with respect to whether further exploration for, and the development and production of, oil and gas within the coastal plain should be permitted and, if so, what additional legal authority is necessary to ensure that the adverse effects of such activities on fish and wildlife, their habitats, and other resources are avoided or minimized.[11]

The Secretary submitted the required report to Congress on April 21, 1987 and recommended that Congress "enact legislation directing the Secretary to conduct an orderly oil and gas leasing program for the 1002 area at such pace and in such circumstances as he determines will avoid unnecessary adverse effect on the environment."[12] To date, Congress has not authorized any leasing programs on the coastal plain, nor has it been designated as wilderness.

On July 9, 2013, the State submitted a document entitled "The State of Alaska's ANILCA Section 1002(e) Exploration Plan and Special Use Permit Application" ("the Plan") to the Regional Director of the United States Fish and Wildlife Service ("the Service").[13] On July 23, 2013, the Service responded, stating that (1) "the authorization for an exploration program in section 1002 of ANILCA expired in 1987 when the Secretary of the Interior submitted the Report required by that section to Congress"; (2) the Plan

---

[11] *Id.* § 3142(e)(1–6); ANILCA § 1002(e)(1–6).

[12] United States Department of the Interior, ARCTIC WILDLIFE REFUGE, ALASKA, COASTAL PLAIN RESOURCE ASSESSMENT (1987), p. VII (Summary Report). The Secretary's report was submitted several months late due to a court ruling that required the Department of the Interior to seek public participation before submitting the report to Congress. *Trustees for Alaska v. Hodel*, 806 F.2d 1378 (9th Cir. 1986); 52 Fed. Reg. 12,980-01, 1987 WL 131243 (April 20, 1987) (Notice of Availability of Report).

[13] *See* DOC000302–545.

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 5 of 17
Case 3:14-cv-00048-SLG Document 65 Filed 07/21/15 Page 5 of 17

was also time-barred by 50 C.F.R. § 37.21(b); and (3) that "[a]s a result, the State's Exploration Plan will not be analyzed for conformance with the criteria for exploration plans."[14] Attached to the Service's response was a legal memorandum prepared by the Office of Solicitor of the Department of the Interior dated January 18, 2001, in which the Solicitor concluded that "with the submission of [the 1002(h)] report [in 1987], the [Secretary's] statutory authority to permit exploratory activity on the Arctic Refuge coastal plain . . . expired."[15]

On August 21, 2013, the State requested reconsideration of the Service's decision not to consider the State's Plan.[16] On September 20, 2013, the Service responded.[17] It expressly adopted the analysis of the Solicitor's 2001 memorandum and denied the State's request for reconsideration.[18] The Service's denial of reconsideration constituted the final agency action on the matter.[19] The State then brought this action seeking declaratory and injunctive relief and review of the Secretary's decision under the Administrative Procedures Act.

The State of Alaska seeks a declaration by the Court that § 1002(e) of ANILCA authorizes and obligates the Secretary to review and approve exploration plans on a continuing basis. The State maintains that the terms of § 1002(e) unambiguously require

---

[14] DOC000546–47.

[15] DOC000554.

[16] DOC000562–76.

[17] DOC000577–86.

[18] DOC000581 n.2; DOC000586.

[19] *See* 50 C.F.R. § 37.22(c).

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 6 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 6 of 17

the Secretary to do so, and that the Secretary's interpretation of the statute to the contrary is invalid. The Secretary responds that the meaning of § 1002(e) is ambiguous because the purpose of permitting exploratory activity in the coastal plain was to generate the report to Congress mandated in § 1002(h), and therefore the Secretary has reasonably interpreted the statute to accord to her the authority and obligation to approve plans only until that report was submitted, which occurred in 1987. The Intervenor-Defendants in this case are comprised of eight environmental groups and an organization made up of the 8,000 members of the Gwich'in Nation.[20] They assert that § 1002 unambiguously terminated the Secretary's authority and obligation to approve exploration plans after the submission of the report in 1987 and accordingly support the Secretary's decision not to review the Plan.

At Docket 55 is the State's Motion for Summary Judgment. The motion has been fully briefed and oral argument was held on January 20, 2015.[21] In their response to the State's motion, Defendants seek summary judgment in their favor.[22] For the reasons set forth below, Plaintiff's motion for summary judgment will be denied and summary judgment will be granted in favor of Defendants and Intervenor-Defendants.

---

[20] Docket 13 at 2.

[21] *See* Docket 63.

[22] *See* Docket 58 (Fed. Defs. Opp.) at 28. Pursuant to Local Rule 16.3(c)(2), the opposition briefs of Defendants and Intervenor-Defendants are deemed to be cross-motions for summary judgment.

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 7 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 7 of 17

## Discussion

### I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the case arises under the laws of the United States. An aggrieved party may seek review of federal agency action in federal court pursuant to the Administrative Procedure Act.[23]

### II. Standard of Review

In reviewing an agency's interpretation of a statute for which it is responsible, this Court follows the deferential two-step inquiry set out in *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*[24] First, the Court asks "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[25] Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.[26] This approach "is premised on the

---

[23] 5 U.S.C. § 702.

[24] 467 U.S. 837, 843–44 (1984). Prior to undertaking the two-step *Chevron* inquiry, the Court must determine whether Congress intended "the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law." *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). This step is colloquially referred to as "Step Zero" of the *Chevron* analysis. *See, e.g., Oregon Rest. & Lodging v. Solis*, 948 F. Supp. 2d 1217, 1222-23 (D. Or. 2013). *See also Alaska Wilderness League v. Jewell*, --- F.3d ---, 2015 WL 3620115 at *3-4 (9th Cir. June 11, 2015). The parties do not dispute that Congress intended the Department of Interior to speak with the force of law in interpreting ANILCA.

[25] *Chevron*, 467 U.S. at 842–43.

[26] *Id.* at 843. The Supreme Court and the Ninth Circuit sometimes describe the statutory standard as "whether the agency's interpretation is reasonable." *See King v. Burwell*, --- U.S.---, 135 S.Ct. 2480, 2488 (2015); *Alaska Wilderness League*, 2015 WL 3620115 at *7.

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 8 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 8 of 17

theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps."[27]

### III. Step 1: Is § 1002(e) ambiguous as to the continuing authority and obligation of the Secretary to review exploration plans that are submitted after the Secretary provided the report to Congress in 1987?

At Step 1 of the *Chevron* analysis, the Court must determine whether Congress spoke directly and unambiguously to the Secretary's post-report authority and obligation to review and approve exploration plans. The State asserts that § 1002 is unambiguous in providing that the Secretary must review—and, if warranted, approve—exploration plans submitted in accordance with ANILCA whenever they are submitted. The State's argument is threefold. First, it asserts that the text of § 1002(e)(2) speaks directly and in detail on the Secretary's authority to approve exploration plans. The State asserts that § 1002(e)(2) "establishes a multi-step process that directs the Secretary's approval authority, carefully limits the Secretary's discretion, and concludes with a requirement that the Secretary approve any plan that is consistent with her guidelines."[28] The State emphasizes the repeated use of the statutory term "shall" within § 1002(e)(2), and notes that "absent from this carefully crafted scheme is any subsection or provision that limits the requirement that the Secretary review and approve exploration plans based on when such plans are filed."[29] Second, the State asserts that "Congress spoke in plain and unambiguous terms . . . about the extent of the Secretary's authority to approve

---

[27] *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000).

[28] Docket 56 (State's Brief) at 17.

[29] *Id.* at 17–18 & n.30.

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 9 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 9 of 17

exploration plans" and therefore the statute cannot be interpreted as limiting the Secretary's authority.[30] And finally, the State asserts that in the absence of a clear time limitation on the Secretary's authority, "it is unreasonable to assume . . . that Congress . . . intended such a restriction but simply forgot to include it."[31]

For their part, Defendants assert that § 1002 is ambiguous as to whether exploratory plans may be submitted after the Department of the Interior has submitted its report to Congress. Defendants acknowledge that "[o]n its face, ANILCA is silent as to the deadline by which exploration plans must be submitted to the Secretary."[32] However, Defendants assert that "silence . . . normally creates ambiguity. It does not resolve it."[33] Defendants also assert that the lack of a specified deadline for the submission of exploratory plans in § 1002 contrasts with the explicit time limits in other portions of ANILCA and creates an ambiguity as to the duration of the Secretary's authority to approve exploratory plans.[34] They stress that § 1002(h), with its five-year reporting deadline, places § 1002(e)(2)'s grant of authority to approve exploration plans in context. They point to § 1002(h)(6)'s explicit reference to "whether further exploration should be permitted" and maintain that this language "contemplates that any exploration occurring after submittal of the report to Congress would need additional authorization" and

---

[30] *Id.* at 19.

[31] *Id.* at 20.

[32] Docket 58 (Fed. Defs. Opp.) at 9.

[33] *Id.* (quoting *Barnhart v. Walton*, 535 U.S. 212, 218 (2002)).

[34] *Id.* (citing Docket 56 (Pls. Brief) at 21 n.33 (listing ANILCA deadlines, e.g. 16 U.S.C. §§ 460mm-1(a), 460mm-3(d), 3412(d)(1))).

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 10 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 10 of 17

therefore the Secretary's duties and authority to approve exploration plans ended with the submission of that Congressional report.[35] Intervenor-Defendants go one step further, and assert that § 1002(h) unambiguously provides that the Secretary's authority and obligation to review and approve exploration plans under § 1002(e) was time-limited and expired in 1987.[36] The State responds that Defendants' interpretation of the term "further exploration" is unreasonable under the canons of statutory construction, and that the proper interpretation of that term unambiguously establishes the Secretary's authority to authorize other types of exploratory activity in addition to those originally authorized in § 1002(e).[37]

In considering the proper approach to interpreting statutory language, the Supreme Court has instructed that

> oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions.[38]

Examining § 1002 and ANILCA as a whole, the Court finds that the purpose of § 1002(h)—namely, to report to Congress after an initial evaluation of the wildlife and the oil and gas resources of the coastal plain—and the lack of a specific time limitation on the obligation of the Secretary to approve exploration plans authorized in § 1002(e) creates

---

[35] *Id.* at 9–12.

[36] Docket 59 (Intervenors' Opp.) at 18–19.

[37] Docket 60 (Reply) at 13–14.

[38] *King*, 135 S.Ct. at 2489 (internal quotation marks and citations omitted).

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 11 of 17
Case 3:14-cv-00048-SLG Document 65 Filed 07/21/15 Page 11 of 17

an ambiguity as to whether Congress intended for that authority to expire in 1987 when the Secretary submitted the mandated report to Congress.[39] Because an ambiguity exists as to the Secretary's continuing authority to review and approve exploration plans, the Court moves to Step 2 of the *Chevron* analysis.

    **IV.**    **Step 2: Is the Secretary's interpretation of § 1002 based on a permissible construction of the statute?**

At Step 2 of the *Chevron* analysis, the Court determines whether the agency's interpretation of ambiguous statutory text is based on a permissible construction of the statute. The Court need not find that the agency's interpretation is the only permissible construction or that it is the Court's preferred construction.[40] Rather, when "the agency's answer is based on a permissible construction of the statute," a reviewing court must defer to the agency's view and not "impose [its] own construction on the statute."[41] And in conducting its review, a court should "take into account the consistency of the agency's position over time."[42] To determine whether an agency's interpretation of a statute is permissible, a court looks "to the plain and sensible meaning of the statute, the statutory provision in the context of the whole statute and case law, and to the legislative purpose and intent."[43]

---

[39] The parties' dispute over the meaning of the term "further exploration" as it is used in § 1002(h)(6) also evidences the ambiguity of the Congressional intent to establish a time limit for exploratory activities. *See* discussion, *infra* at 14-15.

[40] *NRDC v. U.S. EPA*, 526 F.3d 591, 605 (9th Cir. 2008).

[41] *Chevron*, 467 U.S. at 843.

[42] *NRDC*, 526 F.3d at 605 (emphasis omitted).

[43] *Id.* (citation omitted).

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 12 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 12 of 17

The State raises several arguments as to why the agency's interpretation of the statute is unreasonable. First, the State critiques the Solicitor's memorandum and its interpretation of § 1002 for failing to properly start with the precise language of § 1002(e)(2) and failing to identify an ambiguity in that statutory text.[44] But the Solicitor expressly acknowledged that § 1002 does not contain any express statement of expiration for exploratory activity.[45] And the Solicitor recognized the statute's ambiguity when he observed that "there are two possible answers" to the question of whether § 1002 permits exploratory activity after the report had been submitted.[46]

The State next asserts that § 1002(h)'s reporting requirement cannot reasonably create a temporal limitation on the Secretary's authority and obligation to approve exploration plans because "the report to Congress is not even identified as one of the express purposes of section 1002—let alone as its overarching purpose to which the authorization of 'exploratory activity' is subordinate."[47] But immediately preceding that assertion, the State acknowledges that one of the three purposes of § 1002 is "to provide for 'an analysis of the impacts of oil and gas exploration, development and production.'"[48] That purpose is fulfilled by the authorization of time-limited exploratory activity and the follow-up reporting on that activity to Congress as directed in § 1002(h).[49] Moreover,

---

[44] Docket 56 (State's Brief) at 24–27.

[45] DOC000558.

[46] DOC000554.

[47] Docket 56 (State's Brief) at 28.

[48] *Id.* (quoting ANILCA § 1002(a); 16 U.S.C. § 3142(a)).

[49] The mandated report ties directly into the authorized exploratory activity by seeking "the identification by means other than drilling of exploratory wells of those areas within the coastal

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 13 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 13 of 17

§1002(e) provides that the Secretary may not approve any plan submitted by the United States Geological Survey unless no other plan has been submitted for exploration of the same area and "the information is needed to make an adequate report under subsection (h) of this section." This language further supports the agency's interpretation as it expressly relates the authorized exploratory activity to the report that Congress had mandated.

The State next highlights that § 1002(e) refers to "exploratory activity," while § 1002(h) directs the Secretary to report to Congress on whether "further exploration . . . should be permitted." The State asserts that

> it must be presumed that Congress had something different than "exploratory activity" in mind when it asked for a recommendation in subsection 1002(h) on whether "further exploration" should be allowed. That something different was naturally the drilling of exploratory wells—the activity necessary for both the next step of exploration and the actual production and development of oil and gas. The drilling of exploratory wells in the coastal plain had been prohibited by section 1003's ban on oil and gas development in ANWR, and was not included in the definition of "exploratory activity," and so it would make sense that Congress would want to reserve to itself the decision whether such "further exploration" should be allowed, based on the information provided in the subsection 1002(h) report.[50]

The term "further exploration" could be read to encompass additional types of "exploratory activities" conducted after the submission of the § 1002(h) report, such as exploratory drilling. But the Court is not persuaded by the State's assertion that principles

---

plain that have oil and gas production potential," which further supports the Secretary's interpretation. ANILCA § 1002(h)(6)(1).

[50] *Id.* at 30.

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 14 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 14 of 17

of statutory construction make that the only permissible interpretation. Indeed, a plain and sensible reading of § 1002(h) would indicate the contrary.[51] The agency's conclusion that "further exploration" creates a temporal limitation on all forms of exploratory activity is reasonable and permissible in light of the text of § 1002 and ANILCA as a whole.[52]

Finally, the State asserts that "the fact that Congress wanted a report by a date certain, and that the 'exploratory activity' authorized by subsection 1002(e)(2) played a role in gathering the information necessary for the report, does not mean that the report to Congress was the only purpose to be served by the authorization of 'exploratory

---

[51] The word "further" as an adjective can mean "going beyond what already exists or has been dealt with; additional, more" as well as "[m]ore distant, remoter." OXFORD ENGLISH DICTIONARY, vol. VI p. 284–85 (2d ed. 1989). As such, "further exploration" could plausibly be read to mean "more exploration after the exploration undertaken to generate the report has been concluded" or "exploration of an additional type to what is already provided for by the statute." The Service's construction of the statute to include a temporal limitation is consistent with the first definition.

[52] The State's related arguments are also unpersuasive. The State suggests that the requirement that the Secretary's report include "what additional legal authority is necessary" to avoid adverse impacts on fish and wildlife from additional oil and gas exploration would be nonsensical if "further exploration" includes "exploratory activity." Docket 56 (State's Brief) at 32. But there is no such conflict where "further exploration" includes but is not limited to "exploratory activity," because additional authority could well be required to address the additional activities beyond the specified exploratory activity. Nor is the Court persuaded by the State's assertion that the Secretary's interpretation is impermissible because "Congress already knew that 'exploratory activity' . . . was not having significant adverse effects on the fish and wildlife . . . because any such activity was conditioned on compliance with the guidelines that Congress itself instructed be put in place in section 1002(d) to protect these values." *Id.* Section 1002(c) provides for a baseline study of fish and wildlife before any exploratory activity commences with updates to be published thereafter. Section 1002 can reasonably be read to mean that Congress sought to understand the effects of the exploratory activity it had approved on the fish and wildlife of ANWR and to re-assess whether further exploratory activity of any nature should continue after the report was submitted. Finally, the State asks the Court to extend the principle of *noscitur a sociis* too far. *See generally Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 287–88 (2010) (literally translated, "it is known from its associates"). That maxim does not require the agency to conclude that the term "further exploration" only encompasses acts preceding the "development and production" of oil and gas that are distinct from "exploratory activity" defined elsewhere in the statute.

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 15 of 17
Case 3:14-cv-00048-SLG Document 65 Filed 07/21/15 Page 15 of 17

activity,' or that the authorization for such activity necessarily expired once the report was submitted."[53]   But the Court's task is only to determine whether the Secretary's interpretation of her authority under § 1002 is a reasonable or permissible interpretation of ANILCA.  The Court finds that the Secretary's interpretation that § 1002(e) exploratory activity was only intended to generate information for the § 1002(h) report such that the authority to approve such exploration expired upon submitting the report to Congress in 1987 is a reasonable and permissible construction of the statute.

In addition to constituting a reasonable interpretation in the context of the statute as a whole, the Court notes that the Secretary's interpretation of § 1002(e) is long-standing.[54]  The Secretary's interpretation dates back at least to the January 18, 2001 Solicitor's memorandum.[55]  And, as discussed by the parties, the Secretary's permitting regulation authorized exploratory activity only through May 31, 1986, which also supports an inference that the Secretary from the outset interpreted the statute to impose a temporal limit on exploratory activities, using an ending date for those activities just a few months prior to the statutory due date of the report.[56]  The long-standing nature of the Secretary's interpretation lends additional weight to giving that interpretation deference.[57]

---

[53] Docket 56 (Brief) at 33–34.

[54] *See North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 522 n.12 (1982) ("In construing a statute, this Court normally accords great deference to the interpretation, particularly when it is longstanding, of the agency charged with the statute's administration.").

[55] *See* DOC000554.

[56] 50 Fed. Reg. 37.21.

[57] And, as set out by the Solicitor, ANILCA's legislative history also lends considerable support to the Secretary's long-standing interpretation that exploratory activities were to be limited to a three year period that concluded prior to the submission of the 1987 report to Congress.  *See*

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 16 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 16 of 17

In summary, Congress authorized the Secretary to approve limited-duration exploratory activity on the coastal plain and ordered a report generated from these activities to be submitted to it by 1987. Whether the statute authorizes or requires the Secretary to approve additional exploration after the submission of the 1987 report is ambiguous. The Secretary's interpretation that her statutory authority and obligation to review and approve exploration plans ceased after the 1987 report had been completed is based on a permissible and reasonable construction of the statute. As a result, the agency's interpretation of § 1002 will be upheld.[58]

## *Conclusion*

For the foregoing reasons, IT IS ORDERED that:

1. Summary judgment is GRANTED to Defendants and Intervenor-Defendants. Plaintiff's Motion for Summary Judgment at Docket 55 is DENIED;

2. The Clerk of Court shall enter judgment accordingly.

DATED this 21st day of July, 2015 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

DOC000555–56 (citing S. Rep. 96-413, *supra* n.4, at 240).

[58] Because the Court upholds the Secretary's interpretation of ANILCA § 1002, it does not reach the State's arguments as to the Secretary's interpretation of 50 C.F.R. § 37.21(b).

Case No. 3:14-cv-00048-SLG, *State of Alaska v. Jewell, et al.*
Order re Summary Judgment
Page 17 of 17
Case 3:14-cv-00048-SLG   Document 65   Filed 07/21/15   Page 17 of 17